**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MACNEIL O/B/O A.T.M. and C.E.M.,

                          Plaintiffs,

     v.                                  No. 1:14-CV-1398
                                          (GLS/CFH)

CAROLYN W. COLVIN, Commissioner
of Social Security Administration,

                          Defendant.

---

**APPEARANCES:**                         **OF COUNSEL:**

HUGHES, HUBBARD LAW FIRM          HAGIT M. ELUL, ESQ.
One Battery Park Plaza                     MILES D. ORTON, ESQ.
12th Floor
New York, New York 10004
Attorneys for Plaintiffs

SOCIAL SECURITY ADMINISTRATION    SANDRA M. GROSSFELD, ESQ.
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

Plaintiff Sharon MacNeil ("plaintiff," where appropriate) brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Child Insurance Benefits on behalf of her minor children A.T.M. and C.E.M. ("children," where appropriate). Plaintiff moves for a finding that the children are entitled to benefits, and

the Commissioner cross moves for a judgment on the pleadings. Dkt. Nos. 11, 12.[1] For the following reasons, it is recommended that the determination of the Commissioner be affirmed.

## I. **Background**[2]

On October 8, 2008 plaintiff filed for child survivor benefits for A.T.M. and C.E.M. Those applications were denied on March 31, 2010. Dkt. No. 10-1 at 54-56, 57-59. Plaintiff timely filed for reconsideration. Dkt. No. 10-1 at 60-61. Following reconsideration, the applications were again denied. Id. at 63-66, 67-68. Plaintiff requested a hearing before an administrative law judge ("ALJ") regarding both applications. Id. at 80-81. A hearing was scheduled for December 14, 2012; however, "the ALJ indicated that he did not view it was necessary to have [plaintiff] testify because he determined found the evidentiary record to be complete. Consequently, no hearing was held." Dkt. No. 11 at 11. On February 14, 2013, plaintiff's applications were denied as to both children in nearly identical decisions. Dkt. No. 10-1 at 20-31. On September 16, 2014, the Appeals Council denied plaintiff's timely requests for review, making the ALJ's findings the final determination of the Commissioner. Id. at 5-14. This action followed. Dkt. No. 1 ("Compl.").

---

[1] Plaintiff has requested oral argument; however, after careful review of the administrative transcript and the parties' briefs, the undersigned does not find oral argument to be necessary. Such determination is within the discretion of the District Court. See G.O. 18 (stating that, in an appeal of a decision of the Commissioner pursuant to 42 U.S.C. 405(g), "generally no oral argument will be heard by the court.").

[2] Unless otherwise indicated, all citations to the administrative transcript refer to the pagination generated by CM/ECF.

2

A. **Facts**

Plaintiff married wage-earner Eric MacNeil ("Eric") in New York on October 1, 1994. Dkt. No. 10-1 at 104, 112. Eric was diagnosed with non-Hodgkins lymphoma in January 1995. Id. Understanding that chemotherapy may render Eric sterile, the couple decided to store Eric's sperm in a sperm bank to preserve their ability to have children in the future. Id. at 105. Eric deposited a sperm sample, which was collected by Dr. Theresa Kellom, Clinical Laboratory Director of the Department of Obstetrics & Gynecology at Albany Medical College, and stored in four vials. Id. Six months later, the samples were transferred to the Sperm and Embryo Bank of NJ, Inc. Id. Eric and plaintiff signed a Sperm Storage Agreement which provided that plaintiff would assume ownership of Eric's sperm upon Eric's death. Id. Sadly, Eric passed away from his cancer on May 24, 1996. Id. at 108. Eric did not have a will. Id. At the time of his death, Eric was a resident of New York State. Id. In January 1998, plaintiff executed a second sperm storage agreement, as the initial agreement had expired. Id. at 109, 121-25. In November 2006, plaintiff began the In Vitro Fertilization ("IVF") process. Id. at 110, 126. Plaintiff underwent an IVP procedure on June 1 and 6, 2008. Id. The process was successful, and on February 14, 2008, plaintiff gave birth to fraternal twins, C.E.M. and A.T.M. Id. at 111.

II. **Discussion**

A. **Standard of Review**

In reviewing a denial of child's survivor benefits, the Commissioner's

determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). If supported by substantial evidence, the Commissioner's finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g), as amended; Halloran, 362 F.3d at 31. Pursuant to sentence four of 42 U.S.C. § 405(g), a district court may enter a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the cause for rehearing.

See Raitport v. Callahan, 183 F.3d 101, 104 (2d Cir. 1999). Remand is appropriate where there are "gaps in the administrative record or the ALJ has applied an improper legal standard." Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).

B. **Applicable Law**

1. **Federal Law**

Under 42 U.S.C. § 416(e), a child is defined as "the child or legally adopted child of an individual." As the Supreme Court of the United States has pointed out, this "is a definition of scant utility without aid from neighboring provisions." Astrue v. Capato ex rel. B.N.C., 566 U.S. __ (2012), 132 S. Ct. 2021, 2033 (2012). The Regulations provide that a person is a child, as defined under section 416(e), if he or she satisfies certain criterion in section 416(h). 20 C.F.R. § 404.355(a)(1). Under section 416(h)(2)(A), "applicants who would be eligible to inherit intestate personal property from the insured according to the law of the insured's domiciliary state are deemed 'child[ren]' under the Social Security Act." Bosco ex. rel. B.B. v. Astrue, 10-CV-7544 (LTS/MHD), 2013 WL 3358016, at *4 (S.D.N.Y. Feb. 19, 2013) adopted in part and rejected in part by 2014 WL 3357161 (S.D.N.Y. July 3, 2013) (quoting 42 U.S.C. § 416(h)(2)(A)). The Supreme Court, concluding that the SSA's interpretation of § 416(e) is entitled to Chevron[3] deference, indicates that section 416(h)(2)(A) "completes the definition of 'child' 'for purposes of th[e] subchapter' that includes § 416(e)(1)." Capato, 132 S. Ct. at 2033; 20

---

[3] In Chevron U.S.A., Inc. v. Natural Resources Defense Council Inc., 467 U.S. 837 (1984), the Supreme Court held that where an Agency's interpretation of a status is reasonable, deference to that interpretation is appropriate.

5

C.F.R. § 404.355(a)). The Act

> does not specify as to which version of the domiciliary state's law should be applied, temporally-speaking, SSA regulations provide that the agency will apply the version that is in effect at the time that it makes its final decision, unless doing so would render the applicant ineligible for benefits, in which case the agency will apply whichever of several options is the version most beneficial to the applicant.

Bosco, 2013 WL 3358018, at *4. Further, for an applicant to receive child insurance benefits, beyond being unmarried and under age eighteen, or twenty-two if disabled, the applicant must demonstrate that he or she was "dependent" upon the insured. 42 U.S.C. § 402(d)(1)(C). A child is "deemed" dependent if the child was dependent on the decedent at the time of the decedent's death. Id. § 402(d)(1)(C)(ii). A child will also be considered dependent if the child is "the insured's natural child, as defined in [20 C.F.R. §] 404.355."[4] Abreu v. Colvin, 14-CV-9240 (JCF), 2015 WL 5824073, at * 3 (S.D.N.Y. Oct. 6, 2015) (quoting 20 C.F.R. § 404.361)).

2. **New York State Estates, Powers and Trusts Law**

Under the New York State Estates, Powers and Trusts Law ("EPTL"), property of an individual who died without a will should be distributed among the spouse and surviving issue. NY EPTL § 4-1.1(a)(1). Issue is defined as "descendants in any degree from a common ancestor." EPTL 1-2.10. Under EPTL 4-1.2, a non-marital

---

[4] Under 20 C.F.R. § 404.355, an individual may be eligible for benefits if he or she is a "natural child," and an individual is considered a natural child if he or she "could inherit the insured's personal property as his or her natural child under State inheritance laws[.]"

6

child "is the legitimate child of his father so that he and his issue inherit from his father and his material kindred." A marriage ends at the death of a spouse. Bosco, 2013 WL 3358016, at *7 (citing Hunt v. Hunt, 75 Misc. 209, 211 (Sup. Ct. Kings Cty. 1912), modified 154 A.D. 833 (N.Y. App. Div. 1913).

At the time of the Commissioner's final decision, the version of EPTL 4-1.2 – the section of the statute addressing inheritance by non-marital children – in effect was the 2010 amendment of the EPTL. EPTL 4-1.2 (McKinney's 2010).[5] Under the 2010 version of 4-1.2, a non-marital child may be eligible to inherit from his or her parent if: (1) an order of filiation was properly executed and filed during the father's lifetime, (2) the father has signed an instrument acknowledging paternity that meets certain conditions, or (3) "paternity has been established by clear and convincing evidence," such as by a genetic marker test or "evidence that the father openly and notoriously acknowledged the child as his own." EPTL 4-1.2(a)(2)(C).[6]

---

[5] The parties acknowledge that the 1994 version of the EPTL was in effect at the time of Eric's death and at the time of the children's birth. Under the 1994 test, a child could establish paternity by "clear and convincing evidence" if the child "openly and notoriously acknowledged the child as his own." N.Y. EST. POWERS & TRUSTS 4-1.2(a)(2)(C); EPTL 4-1.2 (1994). However, the parties agree that the more favorable statute is the 2010 amendment, and that, pursuant to 20 C.F.R. § 404.355 (b)(4), such statute applies. See Dkt. No. 11 at 11; Dkt. No. 14 at 11. The 2010 version of EPTL 4-1.2 was applied by the ALJ. Dkt. No. 10-1 at 22. As the 2010 amendment is the more favorable version, the Court will proceed with its review under the 2010 version of the statute.

[6] The EPTL was amended effective November 21, 2014 to allow for inheritance of a child conceived after the death of a genetic parent. EPTL 4-1.2. The child can inherit as issue under the EPTL if the child "is in utero no later than twenty-four months after a genetic parent's death or born no later than thirty-three months after the genetic parent's death." EPTL 4-1.3. The parties agree that this provision does not apply as the amendment was effective after the date of the final decision of the Commissioner. Further, even if it did apply, the children were born more than two years and nine months after Eric's death.

C. **ALJ Determinations**[7]

The ALJ determined that the children were Eric's biological children. Dkt. No. 10-1 at 21. Following Capato, the ALJ next concluded that New York EPTL law is controlling in determining whether the children are entitled to inherit property through intestate succession. Id. at 22. "Due to the relatively novel issue involved," prior to rendering a determination, the "District Office" requested a memorandum from the Regional Office of General Counsel seeking advisement regarding whether the children could inherit property pursuant to the EPTL. Id. The memorandum concluded that, the children "would not be entitled to receive property through intestate succession because New York has 'no provision in its intestacy statutes for those conceived after the decedent's death." Id. The ALJ addressed plaintiff's response to this memorandum, wherein plaintiff argued that "New York intestacy statutes have no explicit provisions preventing posthumously born children from receiving property through intestacy" and that "New York courts have generally interpreted its intestacy statutes expansively and remedially, which gives precedential weight to the proposition that a biological child of a decedent is eligible to inherit through intestate succession unless clearly and specifically denied by statute." Id. The ALJ found the Office of Regional Counsel's position "more persuasive." Id.

The ALJ observed that, pursuant to New York case law, those who are entitled to inherit intestate are determined at the date of the decedent's death. Dkt. No. 10-1 at

---

[7] As the ALJ issued identical, yet separate determination for A.T.M. and C.E.M., absent changing the child's name and switching the gender pronouns, discussion of these decisions will be combined and reference will be made to just one of the decisions. See Dkt. No. 10- at 20-25, 29-34.

22. He observes that the children, born eleven years after Eric's death, "clearly could not have been determined as a distributee at the time of death." Id. at 23. The ALJ pointed out that plaintiff's "supplemental memorandum is essentially silent on this point." Id. The ALJ notes that New York State "carved out a limited exception to this doctrine, allowing children who are conceived before a decedent's death but born after his death to inherit as though they were born during the decedent's lifetime." Id. (citing EPTL 4-1.1(c)). Noting that the children were not conceived until after Eric's death, the ALJ found the exception "extremely damaging" to the children's case. Id. Further, the ALJ opined that, the result of plaintiff's construction – "assuming that paternity is established" would mean that "posthumously born biological children are always entitled to inherit in intestacy" and would render EPTL 4-1.1(c) "entirely bereft of purpose or effect." Id. at 23. Finally, the ALJ argued that EPTL 4-1.1(c)'s plain language was inconsistent with plaintiff's construction, as the language "states that previously conceived but posthumously born children take property '*as if they were born in [the decedent's] lifetime.*" Id. The ALJ concluded that the absence of language in the statue addressing whether "a child neither born nor conceived during the decedent's lifetime could receive property in intestacy," "the only plausible interpretation" of EPTL 4-1.1(c) is that "except as explicitly noted in the provision, children born during the claimant's lifetime are eligible to inherit in intestacy while children not born during the claimant's lifetime are not." Id.

The ALJ also cited to bills that were introduced in the State Assembly in 2007 and 2009 for "insight into the legislative intent behind the relevant statutes at issue."

9

Dkt. No. 10-1 at 23-24. These bills specifically included language that would "expand" the EPTL to include posthumously-conceived children or amended the definition of "issue" to include them. Id. "Contrary to the claimant's assertion that these bills would limit supposedly preexisting rights for posthumously conceived children," the ALJ observed that the two bills indicated that they were drafted because posthumously conceived children "are not recognized as legal heirs and thus are not eligible for any benefits or recognition" or "acknowledge such children who were conceived after the death of a parent." Id. at 24. In addition to observing that plaintiff's construction of EPTL 4-1.1(c) conflicted with the proposed bills, the ALJ noted that "distributions of property would *never* be final" which would "inject essentially unlimited uncertainty into the administration of the state's intestacy laws, which could scarcely have been the intent of the state legislature." Id.

The ALJ pointed out that the Supreme Court has provided that the aim of survivor benefits "was not to create a program 'generally benefitting needy persons'; it was, more particularly, to 'provide . . . dependent members of [a wage earner's] family with protection against the hardship occasioned by [the] loss of [the insured's] earnings." Dkt. No. 24 at 24 (citing Capato, 132 S. Ct at 2025)). The ALJ determined that the children "never endured the 'hardship occasioned by the loss of the insured's earnings' during his lifetime." Id. Further citing Capato, the ALJ noted that the Supreme Court "did not adopt the claimant's 'expansive and remedial' view that the EPTL grants inheritance rights to all posthumously born biological children" and that "with the provision contained in EPTL 4-1.1(c)." Id. Instead, Capato found that New

10

York State set forth section 4-1.1(c) to provide for when post-humously born biological children could inherit. Id. at 25. Thus, because the ALJ concluded that the children could not inherit property from Eric under New York State law, they were not "child[ren] of the deceased wage earner within the meaning of Social Security law and therefore [are] not entitled to child survivor's benefits on his account." Id.

### D. **Analysis**
#### 1. **Can the Children inherit under the EPTL?**

Plaintiff argues that the ALJ's determination is not based on substantial evidence because the children are entitled to receive property as non-marital children under EPTL 4-1.2, the "effect" of which the ALJ "entirely ignored." Dkt. No. 11 at 15. She contends that, because "a non-marital child is entitled to inherit intestate if 'paternity has been established by clear and convincing evidence . . . derived from a genetic marker test," and because "there is clear and convincing evidence of the undisputed paternity of the MacNeil twins, they are eligible to inherit under New York intestacy law." Id. at 19. Plaintiff argues that EPTL § 4-1.1(c) does not affect the children's rights to inherit pursuant to section 4-1.2 because "[n]either that section [4-1.1(c)] nor any other EPTL provision pertaining to intestate inheritance, expressly excludes from inheritance any and all children conceived after the death of their father." Id. at 21. Further, she argues that the ALJ "overlooks . . . that the EPTL section 4-1.2 is a remedial statute to be applied expansively[.]" Id. at 23. Further, she contends that, "under the ALJ's interpretation of New York intestacy law, no child conceived after his

11

or her father's death while domiciled in New York would be eligible for child insurance benefits[,]" which violates A.T.M. and C.E.M.'s rights to equal protection under the Fifth Amendment to the Constitution of the United States. Id. at 24-25.

The undersigned agrees that the children are nonmarital children under EPTL 4-1.2. Through a genetic marker test of the paternal grandparents, the children have proven that they are the biological children of plaintiff and Eric, and, thus, have established paternity by clear and convincing evidence. EPTL 4-1.2;[8] Bosco, 2013 WL 3358016, at *5 ("In the case of the 'non-marital children' of the decedent, intestate-succession rights depend in part on whether the non-marital child qualifies as the decedent's 'legitimate' child, as statutorily defined under EPTL 4-1.2."). Thus, the children are the nonmarital, "legitimate children" of plaintiff and Eric for the purposes of the New York intestacy law. Id. However, the undersigned disagrees with plaintiff's argument that the ALJ ignored the effect of EPTL 4-1.2. Dkt. No. 11 at 15.

Were EPTL 4-1.2 able to be read in a vacuum, plaintiff may have a successful argument that a non-marital child (who has properly proven his or her paternity) may be able inherit from his or her father under the statute; however, the analysis does not end there. As noted, the Supreme Court has held that a post-humously conceived child, conceived after the death of a parent, can inherit from his or her decedent parent if the state law provides for such inheritance. Capato, 132 S.Ct. at 2031-32. Under plaintiff's expansive reading of EPTL 4-1.2, all nonmarital children – those biological children

---

[8] Although the plaintiff briefed her reasoning for why the children qualify as non marital children under the 1994 version of the statute, the undersigned agrees that the 2010 version was properly applied, and thus, review of this argument is unnecessary. Dkt. No. 11 at 20-21.

12

conceived and born before death, but outside of a marriage; those conceived before death, but born after death; and those conceived and born after death – fall within 4-1.2's purview. Thus, under plaintiff's reading, all such children are able to inherit as long as they prove they are biological children, and no reference to any other section of the EPTL is required. However, as the ALJ pointed out, EPTL 4-1.1(c) explicitly provides that a child conceived during the decedent's lifetime, but born after his death, would take "as if they were born in [the decedent's] lifetime." Dkt No. 10-1 at 23. If EPTL 4-1.2 provides, as plaintiff asserts, that all non-marital children, post-humous or otherwise, who have demonstrated paternity are entitled to inherit, EPTL 4-1.1(c) would be rendered meaningless.

Under the rules of statutory construction, "courts must interpret a statute to give meaning to each provision so as to 'avoid statutory interpretations that render provisions superfluous.'" Knox v. Agria Corp., 613 F. Supp. 2d 419, 422 (S.D.N.Y., 2009) (quoting State St. Bank & Trust Co. v. Salovaara, 326 F.3d 130, 139 (2d Cir. 2003); Auburn Housing Auth. v. Martinez, 277 F.3d 138, 144 (2d Cir. 2002) ("The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another."); Statutes § 98 (McKinney's 2015) ("[a]ll parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof."). Rather than "create . . . a limitation based on mere implication," as plaintiff suggests the ALJ did by concluding that EPTL 4-1.1(c) suggests that "children

13

born during the claimant's lifetime are eligible to inherit while children not born during the claimant's lifetime are not," in referencing this section, the ALJ applied proper principles of statutory interpretation. Dkt. No. 11 at 22. By providing that children conceived during a decedent's lifetime but born thereafter inherit as if they were born during the decedent's lifetime, the statute, as a result, provides that distrubutees conceived and born after the decedent's lifetime do not take as if they were born during the decedent's lifetime; thus, they do not take at all. See EPTL 4-1.2 (2010).

Plaintiff argues that reading EPTL 4-1.1(c) as improperly "reading an exclusion into the intestacy statute where none is expressly provided for," Dkt. No. 11 at 2, which is "contrary to the textual interpretation doctrine under New York law, which prohibits reading an exclusion into the intestacy statute where non is expressly provided for." Dkt. No. 11 at 22. The undersigned disagrees that the Commissioner's reading of EPTL 4-1.1(c) and 4-1.2 improperly reads an exclusion into the intestacy statute. Rather, the undersigned concludes that such a reading reflects the plain meaning of that section. EPTL 4-1.1 explicitly provides for inheritance by children conceived prior to the decedent's death. Although EPTL 4-1.1 does not contain language explicitly excepting children conceived after the decedent's death, reading section 4-1.1(c) as allowing only children conceived *before* a decedent's death gives "the full force and effect of law . . . applied pursuant to its clear and simple terms." Dkt. No. 11 at 22. Section 4-1.1(c) sets forth a limitation to those children that may inherit intestate – that children born after a decedent's death but conceived in his lifetime may inherit, implying that which is supported by New York case law and legislative history in existence at that

14

time – that a child conceived after a decedent's death does not take as if he or she was born during the decedent's lifetime.

The undersigned further disagrees with plaintiff that the ALJ overlooked the fact that EPTL 4-1.2 "is a remedial statute to be applied expansively." Dkt. No. 11 at 23-24. Despite the fact that 4-1.2 is a remedial statute, insofar as it is being applied pursuant to 42 U.S.C. 416(h)(2)(A), the Commissioner's interpretation reasonably reflects the remedial purpose. Plaintiff recognizes that the purpose of child survivor benefits is "'to provide support to children who have lost either the actual support of an insured parent or the anticipated support which that parent would have been expected to give had his death not intervened." Dkt. No. 11 at 23-24 (quoting Adams v. Weinberger, 521 F.2d 656, 659 (2d Cir. 1975)). The undersigned agrees with plaintiff's statement of the purpose of child survivor benefits. See Capato, 132 S.Ct. at 2032 (citing Califano v. Jobst, 434 U.S. 47, 52 (1977) (holding that the purpose of child survivor benefits is to "'provide . . . dependent members of [a wage earner's] family with protection against the hardship occasioned by [the] loss of [the insured's] earnings.'"). The remedial "purpose" of child survivor benefits, however, do not apply here. Although the children would likely have had Eric's support had they been born during Eric's lifetime, it cannot be said that the children experienced the "loss" of Eric's earnings, because, being born over a decade after his passing, the children never had the benefit of his earnings and, thus, could not have experienced such "loss." The undersigned is unconvinced that the children can be said to have anticipated his support, or been dependent upon it, insofar as they were not conceived until eleven years after his death. Capato, 2013 WL

15

3358016, at *14 ("[I]n the case of posthumously conceived children, there can be no reasonable expectation of continued support from a parent who died before the child was ever conceived."). Thus, the ALJ's interpretation of EPTL 4-1.2, as relevant here, properly reflects the purpose of child survivor benefits.

Further, a look at New York case law also weighs against plaintiff's interpretation. "New York case law clearly demonstrates that the class of intestacy heirs closes as of the date of a decedent's death." Bosco, 2013 WL 3358016, at *8 (citing Clark v. Jeter, 486 U.S. 456, 461 (1988) and In re Bruce's Will, 38 Misc. 2d 1035, 1038 (N.Y. Surr. Ct. 1963)); see also Estate of Uhl, 818 N.Y.S.2d 403, 405-06 (N.Y. App. Div. 2006); In re Martin B., 17 Misc. 3d 198, 201 (N.Y. Surr. Ct. 2008) (finding modification in New York intestacy law "intended to ensure certainty in identifying persons interested in an estate and finality in its distribution.").[9] At the time of Eric's death, the children were neither born nor conceived. The undersigned agrees with Bosco insofar as it holds that, prior to the 2014 amendment of the EPTL, posthumously conceived children were "ineligible to inherit intestate in New York because, to qualify as an intestacy heir, an individual must have been living or conceived as of the time of the decedent's death. A posthumously conceived child, by definition, fails to satisfy this requirement." Bosco, 2013 WL 3358016, at *12. Similarly, as extensively set forth by the ALJ, bills introduced in the State assembly also reflect an interpretation that the state intestacy

---

[9] The Court again recognizes that the EPTL was amended, effective in 2014, to allow for posthumously conceived children to inherit intestacy in certain circumstances, and, thus, after this amendment, case law may no longer abide by as strict a demarcation, it is undisputed that the section of the statue allowing for such children to inherit was not in existence at the time of the final determination of the children's cases; thus, any New York case law that may exist that looks beyond the time of the decedent's death to determine those entitled to inherit would not apply herein.

16

law excluded post-humously conceived children from inheriting. See N.Y. Assem. B. 4421, 230th Leg. (N.Y. 2007). Thus, New York case law and legislative history also support the Commissioner's determination.

Accordingly, the undersigned finds that substantial evidence supports the Commissioner's conclusion that New York State intestacy law then in effect did not allow a post-humously conceived child to inherit intestate.[10]

### 2. **Did the ALJ violate the Children's right to Equal Protection?**

Plaintiff argues that the ALJ's interpretation of the New York State intestacy law then in effect violates the children's right to equal protection under the Fifth Amendment. In so arguing, she contends that intermediate scrutiny should apply as such scrutiny is "applied to classifications based upon the circumstances of a child's birth." Dkt. No. 11 at 25 (citing Clark, 486 U.S. at 461). By contrast, the Commissioner urges the Court to apply rational basis review. The undersigned agrees that rational

---

[10] Although not addressed by the ALJ, the Commissioner provides that children who cannot inherit under state intestacy law may still qualify as a child under the Act if they can qualify under § 416(2)(B) or 416(h)(3). 42 U.S.C. §§ 416(h)(3)(C)(i)-(ii); 20 C.F.R. § 404.355(a)(3)-(4). However, the Commissioner argues, and the undersigned agrees, that the children cannot demonstrate eligibility through section 416(h)(2)(B) or 416(g)(3). Section 416(h)(2)(B) clearly does not apply, as Eric and plaintiff had a valid marriage. 42 U.S.C. § 416(h)(2)(B). Similarly, the children also do not qualify under section 416(3). Under this section, an individual who cannot qualify as a "child "under § 416(h)(2)(A) may be eligible for survivor benefits if (1) the decedent acknowledged in writing that the applicant was his child, (2) was decreed by a court to be the applicant's parent, or (3) was ordered by the court to contribute to the support of the child. 42 U.S.C. § 416(h)(3)(A). Again, the children cannot meet these requirements, as none of the factors set forth in this section occurred. The final way an applicant not qualifying as a child under 416(h)(2)(A) may be eligible is if the decedent parent was living with the children or contributing to their support at the time the children's application for benefits was filed. 42 U.S.C. § 416(h)(3)(B). As Eric passed away several years prior to the children's birth, this section also does not apply. See Bosco, 2013 WL 3358016, at *5 (noting that the SSA "interpreted 42 U.S.C. 416(h)(3)(C)(ii) to be inapplicable to children who are conceived after the date of an insured's death." (citing Soc. Sec. Program Operations Manual Sys. § GN 00306.001C). Thus, the children cannot qualify for survivor benefits, in the alternative, under § 416.

17

basis review is proper.

In Capato, the respondent set forth a similar argument to plaintiff, contending that intermediate scrutiny must be applied in reviewing the statute's constitutionality, insofar as the statute in question treated children conceived posthumously as "an inferior subset of natural children who are ineligible for government benefits simply because of their date of birth and method of conception." Capato, 132 S. Ct at 2033. Rejecting the argument that intermediate scrutiny should be applied, the Supreme Court concluded that "[n]o showing has been made that posthumously conceived children share the characteristics that prompted our skepticism of classifications disadvantaging children of unwed parents. We therefore need not decide whether heightened scrutiny would be appropriate were that the case." Capato, 132 S. Ct. at 2033.

The undersigned agrees that plaintiff here has not made a showing that "posthumously conceived children share the characteristics" associated with statutes that "burden[ed] illegitimate children for the sake of punishing the illicit relations of their parents because 'visiting this condemnation on the head of an infant is illogical and unjust.'" Capato, 132 S. Ct at 2033 (quoting Clark, 486 U.S. at 461). The court declines to interpret the EPTL in existence at the time of the final determination of the Commissioner as condemning children born posthumously or punishing children due to their parents' conduct in the same manner as laws excluding children born outside of a marriage, as "no showing has been made that posthumously conceived children share the characteristics that prompted [the Supreme Court's] skepticism of classifications

18

disadvantaging children of unwed parents."  Id.

Under rational basis review, a statute challenged on equal protection grounds will be upheld unless it can be shown that the disparate treatment alleged in the statute is "so unrelated to the achievement of any combination of legitimate purposes that [it is] irrational."  Kimel v. Florida Bd. of Regents, 528 U.S. 62, 84 (2000).  As a challenged statute is presumed to be valid, the burden is on the challenger "to negative every conceivable basis which might support it . . . whether or not the basis has a foundation in the record."  Heller v. Doe, 509 U.S. 312, 220-21 (1993).

Here, the EPTL meets rational basis review.  As noted by the Supreme Court in Capato, relying on a state's intestacy laws, even if that renders a post-humously conceived child ineligible to receive child survivor benefits, is "reasonably related" to the government's interest in "[reserving] benefits [for] those children who have lost a parent's support[.]" Capato,132 S Ct. at 2033.  Because the EPTL, as interpreted by the ALJ, meets rational basis review, it does not violate the children's rights to equal protection under the Fifth Amendment.

### E. **Conclusion**

"Even if the SSA's . . . interpretation is not the only reasonable one, it is at least a permissible construction that garners the Court's respect under Chevron . . ."  Capato, 132 S. Ct. at 2027; see also Linares Huarcaya v. Mukasey, 550 F.3d 224, 229 (2d Cir. 2008).  Here, the Commissioner's interpretation of the EPTL and whether the children are entitled to child survivor benefits is at least reasonable.  Although Eric's untimely

19

death and the fact that the children never were able to know their father is nothing short of tragic, the ALJ properly applied New York State intestacy law as it then stood. It is the province of the New York State legislature to determine whether it is appropriate for post-humously conceived children such as A.T.M. and C.E.M. to inherit under intestacy law, not the Court's.

**WHEREFORE**, it is hereby **RECOMMENDED**

that the Commissioner's motion for judgment on the pleadings, Dkt. No. 14, be **GRANTED**, and plaintiff's motion, Dkt. No. 11, be **DENIED,** pursuant to 42 U.S.C. § 405(g); and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have **fourteen (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court**. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED.**

Dated: February 8, 2016
 Albany, New York

Christian F. Hummel
U.S. Magistrate Judge